UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL ACTION NO. 5:18-CR-10 |
| | § | |
| SANTOS EFREN JURADO-GARCIA | § | |

## ORDER

Defendant's Motion to Suppress Evidence raised two issues: (1) whether Laredo Police Officer Alvarado had probable cause to arrest Defendant on his front porch for assaulting his girlfriend and (2) whether the subsequent warrantless search of Defendant's home was justified by an exception to the warrant requirement. Because the Court answers yes to both questions, Defendant's Motion (Dkt. No. 35) is hereby **DENIED**.

## I. BACKGROUND

On January 3, 2018, Defendant was indicted on three counts of alien-smuggling charges. (Dkt. No. 11). On March 6, the Court held an evidentiary hearing on Defendant's Motion to Suppress (Dkt. No. 35). Based on the exhibits and testimony presented at that hearing, the Court makes the following factual findings.

At approximately 1:25 a.m. on December 10, 2017, Officer Alvarado and two other lieutenants were sitting inside a Denny's restaurant in Laredo. (Dkt. No. 52 at 8, 30). They were soon interrupted by a nervous-looking man. (*Id.* at 8). He was shouting that someone was assaulting a woman named Jenny Garza, an acquaintance of his with whom he was on the phone. (*Id.*). Officer Alvarado could

hear Garza screaming and being roughed up by a man who was also yelling at her. (*Id.* at 8–9).

Officer Alvarado immediately had the man write down Garza's cellphone number. (*Id.* at 9). He also asked the man if he had any other information to share, to which he responded by showing Officer Alvarado a picture of the assailant's pickup truck. (*Id.* at 10). Once his dispatch traced Garza's cellphone, Officer Alvarado rushed to his patrol car and drove to the location. (*Id.* at 12). When he arrived, however, no one answered the door. (*Id.* at 12–13). Officer Alvarado then had his dispatch call Garza. (*Id.* at 13). She sounded agitated and hung up quickly, but did indicate that she was heading to the hospital. (*Id.*).

Around 1:50 a.m., Officer Alvarado spoke with Garza at the hospital, where he observed several bumps and bruises on her body. (*Id.* at 13–15, 30). She told him that she had been pistol-whipped several times and identified Defendant, her boyfriend, as the assailant. (*Id.* at 14). She also said that while Defendant had driven her to the hospital, the staff asked him to leave soon thereafter. (*Id.* at 15). Garza gave Officer Alvarado Defendant's address and cellphone number, but warned him that Defendant kept firearms in his house and was holding undocumented aliens against their will. (*Id.* at 16–17). Other officers soon confirmed that the address Garza gave was a residence and that a truck matching the description of Defendant's was parked outside. (*Id.* at 16–17).

Around 2:45 a.m., Officer Alvarado arrived at Defendant's home. (*Id.* at 30). After failing to reach Defendant via cellphone, Officer Alvarado walked up to the

2

house and knocked on the door. (*Id.* at 17–18). Defendant answered, stepped outside, and was arrested about four feet outside his doorway. (*Id.* at 18). Officer Alvarado, along with other officers on the scene, then entered Defendant's home to search for the aliens and firearms. (*Id.* at 19). They ended up finding the aliens in one of the bedrooms, and Officer Alvarado found a handgun in an open closet sitting in a wicker basket. (*Id.* at 19–20, 27). The search lasted no more than five minutes. (*Id.* at 41).

Defendant argues that both his warrantless arrest and search violated the Fourth Amendment to the United States Constitution. For the reasons that follow, the Court disagrees.

**II. ANALYSIS**

"Generally, on a motion to suppress, the defendant has the burden of proving, by a preponderance of the evidence, that the evidence in question was obtained in violation of her constitutional rights." *United States v. Guerrero-Barajas*, 240 F.3d 428, 432 (5th Cir. 2001). When officers do not have a warrant for the search or seizure, however, the Government bears the burden of proving that the officers' actions were constitutional. *Id.*

Here, the Government argues that Defendant's arrest on his porch was justified by probable cause that Defendant had assaulted Garza. It also argues that the subsequent warrantless search of Defendant's home was justified under either the exigent-circumstances or protective-sweep exceptions. The Court agrees with the Government on all grounds.

**A. Warrantless Arrest**

A warrantless arrest must normally be based on probable cause. *United States v. Wadley*, 59 F.3d 510, 511 (5th Cir. 1995). "Probable cause for a warrantless arrest exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *United States v. Watson*, 273 F.3d 599, 602 (5th Cir. 2001) (citing *Wadley*, 59 F.3d at 512).

In this case, Officer Alvarado had probable cause to arrest Defendant for aggravated assault. Officer Alvarado heard a violent struggle on the phone, observed bumps and bruises on Garza's body, and was told by Garza that Defendant assaulted her. Garza also accurately provided Defendant's address and cellphone number. Given the circumstances, a reasonable officer would have concluded that Defendant had committed a crime.[1]

**B. Warrantless Search**

It is a "basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Groh v. Ramirez*, 540 U.S. 551, 559 (2004) (citation and internal quotation marks omitted). "Nevertheless, because the ultimate touchstone of the Fourth Amendment is

---

[1] Defendant argues that in addition to probable cause, Officer Alvarado needed exigent circumstances to arrest Defendant. While this would be true when a defendant is inside his home, it is not true when, as here, a defendant is arrested on his porch. *See United States v. Watson*, 273 F.3d 599, 602 & n.2 (5th Cir. 2001) ("An arrest on a porch is not considered 'inside' the house for purposes of determining [an arrest's] constitutionality under the Fourth Amendment." (citing *Kirkpatrick v. Butler*, 870 F.2d 276, 280–81 (5th Cir. 1989))).

'reasonableness,' the warrant requirement is subject to certain exceptions." *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) (citations omitted). Two such exceptions occur when (1) there are exigent circumstances justifying the search or (2) law-enforcement officers conduct a protective sweep incident to an arrest. *See, e.g.*, *United States v. Troop*, 514 F.3d 405, 409 (5th Cir. 2008) (discussing exigent circumstances); *United States v. Mendez*, 431 F.3d 420, 428 (5th Cir. 2005) (discussing protective sweeps). The Government has invoked both to justify the warrantless search.

**1. Exigent Circumstances**

Under the exigent-circumstances doctrine, a warrantless search is justified if an officer has probable cause and exigent circumstances to enter the house. *Troop*, 514 F.3d at 409. "One exigency obviating the requirement of a warrant . . . is the need to protect or preserve life or avoid serious injury." *Stuart*, 547 U.S. at 403. *Stuart* and *Troop*, both just cited, adequately illustrate this emergency-aid exigency in action.

In *Stuart*, the Supreme Court held that police officers' entry into a home was justified under the emergency-aid exigency. *Stuart*, 547 U.S. at 406. There, officers approached a house in response to a noise complaint. *Id.* Hearing an altercation inside the home, the officers walked around to the backyard and saw a man in the kitchen pummel another in the face. *Id.* They then rushed in to render assistance. *Id.* The Court held that the officers "had an objectively reasonable basis for believing both that the injured adult *might* need help and that the violence in the

kitchen was just beginning." *Id.* (emphasis added). Nothing more was required. In so holding, it rejected the Fourth Circuit's view that the emergency-aid exigency requires that someone be unconscious or semi-conscious because a police officer's job is not "like a boxing (or hockey) referee, poised to stop a bout only if it becomes too one-sided." *Id.*

By point of contrast, in *Troop*, the Fifth Circuit applied *Stuart* but came out the other way. In that case, border-patrol agents had tracked a group of undocumented aliens to a house. *Troop*, 514 F.3d at 407. Based on footprint indentations and high heat, the agents believed that the undocumented aliens were fatigued. *Id.* at 407–08. The agents, without obtaining a warrant, entered the home and arrested the undocumented aliens. *Id.* at 408. In reviewing the agents' actions, the Fifth Circuit noted that "there is no set formula for determining when exigent circumstances may justify a warrantless entry." *Id.* at 409 (quoting *United States v. Jones*, 239 F.3d 716, 720 (5th Cir. 2001)). Still, it held that fatigue, without any other signs of medical distress, was insufficient to reasonably assume that the suspected aliens needed immediate medical attention. *Id.* at 410–11.

This case sits in between *Stuart* and *Troop*. While Officer Alvarado did not see a violent altercation, as in *Stuart,* he did have more than a vague notion that the aliens may be fatigued, as in *Troop*. In particular Officer Alvarado had probable cause to believe that Defendant was holding an unknown number of undocumented

6

aliens against their will.² Further, he knew that Defendant was armed, could be violent toward his loved ones, and was banished from the hospital. These facts—though not the physical signs of medical distress that *Troop* alludes too—still gave Officer Alvarado a reasonable basis to assume that Defendant could act rashly toward the aliens and cause them grave, immediate injury. Being able to reasonably infer this conclusion is all that *Troop* and *Stuart* ultimately require, regardless of the type of evidence giving rise to that conclusion.

Officer Alvarado was therefore justified in entering Defendant's home to ensure the aliens' safety. The Fourth Amendment does not require officers to stand idly outside a home when they have reason to believe that aliens being held against their will—possibly bound—could be injured inside. This is especially true when the aliens would have inevitably been found. The only question would have been—in what condition.

**2. Protective Sweep**

Incident to an arrest, an officer may perform a protective sweep of a defendant's home. *United States v. Watson*, 273 F.3d 599, 603 (5th Cir. 2001). This is true even if the arrest is made on a porch. *Id.* In order to prove the legality of a protective sweep, the Government must prove that:

> (1) the government agents have a "legitimate law enforcement purpose" for being in the house; (2) the sweep is "supported by a reasonable, articulable suspicion that the area to be swept harbors an

---

² The probable cause stems from Garza's statements at the hospital, which Officer Alvarado had no reason to doubt. Indeed, the Court is unable to think of any motive that Garza could have for fabricating a story about undocumented aliens.

individual posing a danger to those on the scene;" (3) the sweep is "no more than a cursory inspection of those spaces where a person may be found;" and (4) the sweep "last[s] no longer than is necessary to dispel the reasonable suspicion of danger" and "last[s] no longer than the police are justified in remaining on the premises."

*United States v. Mendez*, 431 F.3d 420, 428 (5th Cir. 2005) (alterations in original) (quoting *United States v. Gould*, 364 F.3d 578, 587 (5th Cir. 2004) (en banc)).

Here, all of those elements are met. Officer Alvarado was at Defendant's home for the lawful purpose of arresting him for assaulting Garza. Garza's statements at the hospital provided him with reasonable suspicion that firearms and illegal aliens were on the premises. Had Officer Alvarado not searched the home, one of the aliens could have armed himself, posing a danger to both the officers and the other aliens. *See Mendez*, 431 F.3d at 428 (upholding a protective sweep in part because alien smuggling "is inherently dangerous and often results in death and injury to both aliens and government agents"). The search lasted no longer than five minutes and was limited to places where people could hide. Thus, the protective sweep was constitutional.

Defendant disagrees with this conclusion for three reasons. First, he argues that Officer Alvarado did not receive any reliable information from which to form a reasonable suspicion that any of the aliens in the home were prone to violence. Second, even if Officer Alvarado had such information, he contends that the safer course of action would have been to retreat from the home immediately after arresting Defendant. Finally, Defendant maintains that Officer Alvarado's search of the wicker basket in the closet, where the firearm was found, constituted more

8

than the "cursory inspection" allowed during a protective sweep.

These arguments are unconvincing because they are based on false legal premises. First, officers do not need specific information about the violent tendencies of each individual alien; they only need a reasonable suspicion that both firearms and unsecured persons are in the home. *See United States v. Virgil*, 444 F.3d 447, 451 (5th Cir. 2006) ("The officers, therefore, had a reasonable suspicion . . . that both a firearm and another person might be at the residence, and had authority to perform a protective sweep to prevent harm to themselves." (footnote omitted)). Second, officers are not required to retreat from an area immediately after arresting a defendant. *See United States v. Grice*, 387 F. App'x 466, 467 (5th Cir. 2010) (upholding a protective sweep of a cabin after the officers pulled the defendant outside to effectuate the arrest). And finally, "officers may search areas immediately adjoining the place of arrest, such as closets and other spaces, from which a surprise attack could occur." *United States v. Mata*, 517 F.3d 279, 287 (5th Cir. 2008). These legal principles suffocate all of Defendant's factual arguments.

## III. CONCLUSION

Officer Alvarado had probable cause to arrest Defendant, and the warrantless search of Defendant's home was justified under the exigent-circumstances and protective-sweep exceptions. Defendant's Motion to Suppress (Dkt. No. 35) is therefore **DENIED**.

It is so **ORDERED.**

**SIGNED** March 21, 2018.

                                                                                 Marina Garcia Marmolejo
                                                                                United States District Judge